**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated,<br>　　　Plaintiff, | ) ) ) ) | 1:15-cv-757 |
| 　　　　　v. | ) ) | |
| DIRECT WINES, INC. Defendant. | ) ) | JURY DEMANDED |

<u>**COMPLAINT**</u>

<u>**CLASS ACTION**</u>

1.　　　Plaintiff Nicholas Martin brings this action to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") arising out of improper automated telemarketing calls plaintiff's cellular telephone.

**<u>JURISDICTION AND VENUE</u>**

2.　　　This Court has federal question subject matter jurisdiction because this action is brought under a federal law.

3.　　　Venue is proper because a substantial portion of the events complained of occurred in this District.

**<u>PARTIES</u>**

4.　　　Plaintiff is an individual who resides in this District.　Plaintiff's cellular telephone number is 630-xxx-3271. This number is on the Federal Trade Commission Do Not Call Registry.

5.      Direct Wines, Inc. is based in Norwalk, Connecticut. It is an operating subsidiary of a set of companies located in Reading, Berkshire, England, including Direct Wines Limited and Direct Wines International. Direct Wines, Inc. operates WSJ Wine.

**FACTS**

6.      Plaintiff is a member of WSJ Wine. Plaintiff signed up to receive periodic shipments of wine on the Internet.

7.      Plaintiff has never expressed an interest in receiving telemarketing calls in connection with his WSJ Wines subscription, and has never provided prior express written consent to receive such calls.

8.      On or about December 2, 2014, defendant called plaintiff's cellular phone from caller ID 877-975-9463 on his cell phone.

9.      The December 2, 2014, call was disconnected by plaintiff, around the time that the WSJ Wine representative told plaintiff that the call was being recorded.

10.     Upon information and belief, the purpose of the December 2, 2014, call was to attempt to sell plaintiff wine, in addition to the wine that plaintiff had signed up to receive on a periodic basis.

11.     Plaintiff received a second call on or about January 6, 2015, from the same Caller ID.

12.     During the January 6, 2015, call, the caller tried to sell plaintiff wine. This was in addition to the wine that plaintiff had signed up to receive on a periodic basis.

13.     Both the December 2, 2014, and January 6, 2015 calls were made by defendant for the purpose of selling plaintiff wine, and/or other goods and/or services.

2

14.     The Federal Communications Commission announced a new rule that written consent would be required on February 12, 2012, through a formal rulemaking process. Because the regulations became effective in October 2013, persons that used to make autodialed calls to cell phones had twenty months to come into compliance.

15.     This rule came into effect on October 16, 2013. Since that time, the TCPA has prohibited all telemarketing telephone calls, regardless of whether the caller has a relationship with the recipient, unless the recipient has provided "prior express written consent" to receive such calls.

16.     According to the new regulations, providing one's telephone number to a company does not constitute consent to receive telemarketing calls. 47 C.F.R. §64.1200(f)(7).

17.     In order to be effective as to telemarketing calls, "prior express written consent" must conform to the following:

(8) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

18.     Although plaintiff provided his cellular telephone number to defendant in connection with his subscription, he did not provide anything close to anything that might conform with 47 C.F.R. §64.1200(f)(7).

19.     The web form defendant used to accept new subscribers is attached as <u>Exhibit A</u>. Upon information and belief, this is substantially similar to the form that plaintiff filled out when he initiated service with defendant.

20.     The privacy policy mentioned at the bottom of <u>Exhibit A</u> is attached as <u>Exhibit B</u>.

21.     Neither <u>Exhibit A</u> nor <u>Exhibit B</u> confers prior express written consent, pursuant to 47 C.F.R. §64.1200(f)(7).

22.     For example, neither document mentions key elements of written consent, such as:

(a)     notice that the persons is consenting to receive telemarketing calls;

(b)     notice that the signatory is consenting to receive such calls through use of an automatic telephone dialing system calls; and

(c)     a statement that the signatory is not required to agree to receive such calls as a condition to receiving goods or services

23.     The TCPA prohibits the use of "automatic telephone dialing systems" to call cellular telephones.

24.     "Automatic telephone dialing system" means any equipment that has the "*capacity* to dial numbers without human intervention," *Griffith v. Consumer Portfolio Serv.,*

4

*Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011)(emphasis original), and specifically includes predictive dialers.

25.     Defendant used an automatic telephone dialing system to make these calls.

# COUNT I – TCPA

26.     Plaintiff incorporates all previous paragraphs of this complaint.

27.     It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system.

28.     Plaintiff and the class are entitled to have their rights, status and legal relations under the TCPA relating to defendant's calling of cell phones using an automatic dialing system.

29.     The defendant's calls were negligent, or alternatively, they were willful.   47 U.S.C. §312(f)(1).

## Class Allegations

30.     Plaintiff brings Count I on behalf of a class, which consists of:

All persons nationwide who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where defendant obtained the telephone number from a web form that (a) does not mention telemarketing, (b) does not mention that the signatory consents to receive automatic telephone dialing system calls and (c) does not state that the signatory is not required to agree to receive such calls as a condition to receiving goods or services, and any call was made on or after October 13, 2013.

31.     Plaintiff is a member of the class.

32.     Upon information and belief, based upon industry practices, defendant called more than 100 cell phone numbers that fall within the above class during 2014.

33.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

      a.     Whether defendant used an automatic telephone dialing system as that term is defined in the TCPA and applicable FCC regulations and orders;

      b.     Whether defendant had prior express written consent to make such calls; and

      c.     Damages, including whether the violation was willful.

34.     Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

35.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

36.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

37.     Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions

by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

38.     The identity of the class is likely readily identifiable from defendant's records.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and the class and against defendant that provides the following relief:

a.     Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b.     A permanent injunction prohibiting defendant from violating the TCPA in the future through calling cellular phones using an automatic telephone dialing system and/or a prerecorded voice message unless it first obtains the prior express written consent of the called party;

c.     A declaration that defendant used an automatic telephone dialing system, and violated the TCPA in calling plaintiff and the class; and

d.     Any other relief the Court finds just and proper.

Respectfully submitted,

 Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288

(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com


**<u>JURY DEMAND</u>**


Plaintiff demands trial by jury.


<u>Alexander H. Burke</u>

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke

# Exhibit A



## Special Introductory Offer



## Exclusive Access to Small-Estate Stars

This special offer will put 15 exceptional wines on your table for **only $4.67 a bottle**. Enjoy top-estate California Cabernet, acclaimed Argentine Malbec, a premium Super Tuscan and more. **Read about each wine** — choose reds, whites or a mix of both — and **SAVE $170** as your introduction to The WSJwine Discovery Club.

**How can we make such a generous offer?** Because we believe you'll be impressed and come back for more. But that's entirely up to you. By offering small-batch wines of real flair and value, with convenient home delivery, WSJwine is changing the way people buy wine. This opens a lot of doors. *The Wall Street Journal* name helps too. Winemakers give us their best wines. And customers love the quality and variety.

**Wines you're guaranteed to enjoy.** Just taste for yourself. Detailed notes tell the story of each wine and offer useful serving tips. And every bottle comes with our **money-back promise.** If ever you're not impressed, you don't pay. See full club benefits at right and get started below.

## Choose reds, whites, or a mix of both

Whichever you go for, you'll enjoy **15 world-class wines for JUST $69.99** (plus $19.99 shipping & applicable tax; please allow 10-14 days for delivery).

**Step 1** ❯ **Select your case**

**Discovery Club Reds** - 15 bottles just $69.99 (**view wines**)

**Discovery Club Mix** - 15 bottles just $69.99 (**view wines**)

**Discovery Club Whites** - 15 bottles just $69.99 (**view wines**)

## Step 2 Where would you like your wine delivered?

\* Email Address

\* Confirm Email Address

\* First Name            \* Last Name

Company Name

\* Address 1

Address 2

\* Zip      \* City                    \* State

\* Daytime Phone

Is this address? \*

                        Commercial

        Residential

## Step 3 How would you like to pay?

We accept Visa, MasterCard, Discover and American Express Cards. If you have any questions, please call us at 1-800-264-8209.

        Billing address is same as shipping address

\* Credit Card #          \* Expiration Date          \* CVV

MM          YYYY

**What's this?**

Save my details and create an online account now.

## Step 4   Verify your age and complete your order

I'd like to receive special offers via email.

I certify that I am 21 years or older.

## Today's Great Discovery

**15 outstanding wines**
Worth $239.99 — save $170

**$69.99**

**Expert tasting notes**
To help you get the most
from every bottle

**FREE**

**No-obligation club membership**

**FREE**

## Join NOW and SAVE $170

### Discovery Club benefits

✓ **12 expertly selected wines** reserved for you every 3 months

**Exclusive savings of at least 20%** on future Discovery Club cases – just $149.99 (plus $19.99 shipping & tax)

Case: 1:15-cv-00757 Document #: 1 Filed: 01/26/15 Page 14 of 23 PageID #:14



**Advance notice —** simply go online or call to change wines, delay delivery or skip cases

**Customized selections —** we make it easy for you tell us what wine styles you do and don't like, so we can put together cases that are just right for you

**No obligations —** we'll only ever send you wines you want and you're free to cancel at any time

**Tasting notes** on every wine — packed with useful information and serving advice





100% SATISFACTION GUARANTEE

If you are disappointed with any bottle for any reason, you will be refunded in full.

**PLEASE NOTE:** WSJwine is operated independently of The Wall Street Journal's news department. Offer available to first-time WSJwine Discovery Club customers only and limited to one case per household. Offer subject to availability. In the unlikely event of a wine becoming unavailable, a substitute of similar style and of equal or greater value will be supplied. Every three months, we will reserve you a 12-bottle Discovery Club selection for $149.99 (plus $19.99 shipping and applicable tax). There is no commitment and you may cancel at any time. Once eligible, each year you will be offered two extra-special shipments: one in summer and one for the holiday season. You will be notified in advance of these extra cases and their special-offer price. Again, there is no obligation. Licensed retailers only accept orders from adults at least 21 years old. All orders will be processed and fulfilled by licensed entities in the industry and applicable taxes are paid. Licensed retailers have the right to refuse orders should this advertisement not comply with your state laws. Delivery is available to AZ, CA (offer may vary for California residents), CO, CT, FL, IA, ID, IL, IN, LA, MA, MI, MN, MO, NC, ND, NE, NH, NJ (offer may vary for New Jersey residents), NM, NV, NY, OH, OR (not eligible for free gift), SC, TN, TX, VA, WA, WI, WV, WY and DC. By filling out and submitting this form you understand and agree that WSJwine may send you information about other special offers. Void where prohibited by law.

Copyright © 2015 WSJwine.com. All rights reserved. | **Privacy Policy**







# Exhibit B

Sorry, we are unable to add this product to the cart. Please try again or call customer service.



# You have added:

Item Code:
Item Price:
Quantity:
Cart Summary: 0 items
$0.00

**Item added to your cart**



- 
- Item Code:
- Item Price:
- Quantity:
- **Cart Summary: 0 items - $0.00**

Continue Shopping View Cart & Checkout



Please select the state to which you would like to have your wine shipped. If your state is not listed on the drop-down menu below, we regret that we are unable to ship to you at this time.

Arizona    [ Verify ]   By clicking "Verify" you acknowledge that you are at least 21 years old.

- Shipping To: IL |
- Help |
- Contact Us

- Welcome | Call Us Anytime | 1-877-975-9463
- Log In |
- Register



Holiday Shipping Schedule

View dates, state-by-state

0 items

$0.00

- Monthly Specials
- Wine Clubs
- Latest Finds
- Your Guide
  - Regions
  - Varietals
  - Helpful Hints
  - Food and Wine
  - About Us
- Customer Service
  - Ordering & Payment
  - Shipping & Delivery
  - Account Issues
  - Returns & Substitutions
  - Contact Us
- My Wine Cellar
  - Wines I've Purchased
  - My Favorite Wines
  - My Top-Rated Wines
  - Not For Me List
  - Advice & Recommendations
  - Full Order History
  - Wine Preferences
  - Wine Clubs
  - Advantage
  - Wine Credits
  - Delivery Addresses
  - Billing Address
  - Payment Methods
  - Contact Preferences

Search

# Top Searches

- Napa Valley
- Italy
- Monthly Specials

- France
- Sauvignon Blanc

# Browse Wines

Reset All

## Wine Type

Refine Search

## Country

Refine Search

## Region

Refine Search

## Grape/Varietal

Refine Search

## Bottle Price

Refine Search

## Style/Body

Refine Search

## Rating

Refine Search

Case: 1:15-cv-00757 Document #: 1 Filed: 01/26/15 Page 19 of 23 PageID #:19



# Privacy Policy

WSJwine (the "Site") is operated by Direct Wines, Inc. under an agreement between Direct Wines, Inc. and Dow Jones & Company, Inc., publisher of The Wall Street Journal ("We" and "Us"). The Site offers the opportunity to purchase wines for home or office delivery and review related tastings notes.

We know that you, our valued customer, care how your information is used and how your privacy is protected. We are committed to protecting your privacy and have created this policy (the "Privacy Policy") in order to demonstrate our commitment to that privacy. This Privacy Policy describes how we collect, use and share personally identifiable information ("PII") (such as your name, shipping address, email address, telephone number, or credit card number) we obtain from and about visitors to the Site, members of our wine Discovery Club or customers of the Site.

From time to time we may revise this Privacy Policy to reflect industry initiatives or changes in the law, our PII collection and use practices, the features of the Site, or technology. Your continued use of the Site after we post a revised Privacy Policy signifies your acceptance of the revised Privacy Policy. It is therefore important that you review this Privacy Policy regularly to ensure you are updated as to any changes. If we materially change our practices regarding collection or use of your PII, your PII will continue to be governed by the Privacy Policy under which it was collected unless you have been provided notice of, and have not objected to, the change.

The Site is directed to adults ages 21 or older. We do not knowingly collect PII from children under 13 years of age.

**Information We Collect**

We collect PII from you when you voluntarily provide it to us in order to process your orders and club registration, contact you if there is trouble completing or shipping your orders, send you newsletters you have requested, respond to your requests, and inform you of our new products, services and offers. We may also

Case: 1:15-cv-00757 Document #: 1 Filed: 01/26/15 Page 20 of 23 PageID #:20

obtain PII from reputable third parties.

In addition, we collect other non-PII including IP address, aggregate user data, Site usage information, and browser type to help diagnose problems with our server, manage and improve the Site, gather demographic information, track usage, and for security and monitoring purposes. This information aids us in merchandising and in developing the design and layout of the Site.

We use "cookies" (small pieces of information placed on your computer hard drive) on certain parts of our Site. Cookies allow websites to remember user activity and visits to a site. We use cookies on the Site to determine the number of unique visitors we host on the Site over any given period of time and to keep track of items placed in the "shopping cart" during a visit to the Site. We do not use cookies to collect PII. You can program your computer to warn you each time a cookie is being sent, or disable cookies on your computer by indicating this in the preferences or options menus in your browser. However, by blocking all cookies you may not have access to certain features on the Site.

We may use third-party advertising companies to serve ads or conduct email campaigns on our behalf. These companies may employ cookies and action tags (also known as single pixel gifs or web beacons) to measure advertising effectiveness.

We may use cookies and similar tools to relate your use of the Site to PII obtained from you or a reputable third party. For example, if you've asked us to send you information about our upcoming products or promotions, cookie and other data about your activities on the Site may allow us to limit the materials we provide you to items we think you will find interesting, based on your prior online activities and preferences. However, if we wish to coordinate your personal and Site activity information in this manner, we will obtain your express affirmative consent.

**Notice About Collection of Information**

When you voluntarily provide your PII to us, we will make sure you are informed about who is collecting the information, how and why the information is being collected and the types of uses we will make of the information.

The Site may be linked to Internet sites operated by other companies. We are not responsible for the privacy practices of Web sites operated by third parties that are linked to or integrated with the Site or for the privacy practices of third parties. Once you've left the Site via such a link, you should check the applicable privacy policy of the third party site to determine how they will handle any PII they collect from you.

**Choice About the Use of Your Information**

Except as described in this Privacy Policy, we will not use the PII you provide to us for purposes different from the purpose for which it was submitted without your permission.

**Sharing and Use of Information**

Except as disclosed in this Privacy Policy, we do not share or sell your PII.

We may share your PII with companies that are affiliated with us, including but not limited to Dow Jones and Direct Wines, Inc.

From time to time we may share PII with unaffiliated, third-party businesses that can provide you with

valuable offers and information. However, you will always have the opportunity to instruct us not to share your information with such third parties when PII is collected.

We work with certain companies that, in conjunction with their own membership programs or rewards programs, require that we disclose purchasing information about their customers who visit our site through links from the partner sites, or use the partner's credit card to make purchases on our Site (e.g., to earn points for purchases made on the Site through links from the partner site). We disclose only the information required to make these programs work and support your membership with them, which typically includes the name and/or email address of the user as well as the dollar amount of purchases made. We disclose this information to companies under an agreement that requires that they obtain your consent first, usually under the membership or participation rules. If you do not want us to disclose that information to the strategic partner, then you must contact them directly.

We may use other companies to perform services including, without limitation, facilitating some aspects of our Site, sending e-mail, fulfilling purchase requests, delivering orders, processing credit cards and payment information, serving, customizing or delivering marketing or ads, and auditing. These other companies may be supplied with or have access to your PII and non-PII solely for the purpose of providing these services to us or on our behalf.

There may be instances when we may disclose PII without providing you with a choice in order to protect the legal rights of WSJwine and affiliated companies, including Dow Jones and Direct Wines, Inc., or their employees, agents and contractors; to protect the safety and security of visitors to our site; to protect against fraud or for risk management purposes; or to comply with the law or legal process. In addition, if we sell all or part of the business of WSJwine or makes a sale or transfer of assets or are otherwise involved in a merger or business transfer, we may transfer your PII to a third party as part of that transaction.

**Security**

We use commercially reasonable administrative, technical, personnel, and physical measures to safeguard PII in our possession against loss, theft and unauthorized use, disclosure, or modification.

**Access**

Whenever possible, you may review and update the PII that you have provided to us by contacting Customer Service at customerservice@wsjwine.com.

If you have any questions, comments or concerns about our Privacy Policy, please contact us at:

**Email:** customerservice@wsjwine.com
**Mail:** WSJwine Customer Service
PO Box 551
Montoursville, PA 17754

**Phone:** 1-877-975-9463

In accordance with the Illinois Department of Alcoholic Beverage Control, all orders for wine must be placed with a licensed Illinois wine retailer. WSJwine, along with its marketing partners, has chosen The Wine Cellar.

The Wine Cellar is a Illinois licensed retailer who is able to accept, fulfill and ship your order for WSJwine in

the state of Illinois. Should you have any questions regarding The Wine Cellar, please contact customer service at 1-877-975-9463.

[Continue Shopping](#)

- **Shop Our Wines**
- [Monthly Specials](#)
- [Top Reviewed](#)
- [Red Wines](#)
- [White Wines](#)
- [Mixed Cases](#)
- [Fine & Rare](#)

- **Quick Searches**
- [Advantage](#)
- [Bordeaux](#)
- [Rhone](#)
- [Italy](#)
- [California](#)
- [Rich Reds](#)

- **Customer Service**
- [Ordering & Payment](#)
- [Shipping & Delivery](#)
- [Your Account](#)
- [Returns & Substitutions](#)
- [Refer a friend](#)
- [Contact Us](#)

- **Wine Clubs**
- [Discovery Club](#)
- [Premier Club](#)

- 
-  
  -    

© 2014 WSJwine All Rights Reserved. WSJwine is operated independently of The Wall Street Journal's news department. | [Privacy Policy](#)



All orders are accepted and fulfilled by an Illinois licensed retailer, The Wine Cellar, 1705 New Lenox Rd, Joliet, IL 60433
© 2014 | WSJwine from The Wall Street Journal. All rights reserved.

Case: 1:15-cv-00757 Document #: 1 Filed: 01/26/15 Page 23 of 23 PageID #:23

[Who is the Wine Cellar](#)